THE PEOPLE OF THE TERRITORY OF GUAM
IN THE INTEREST OF
FRANKIE E. VILLAGOMEZ, Minor

Civil Nos. 190-79 & 102-80
Superior Court of Guam
May 7, 1980

- - - - -

WEEKS, Judge

DECISION

On July 8, 1979 and March 27, 1980, petitions were filed by the Attorney General of Guam asking for the certification of the minor Frankie E. Villagomez for prosecution as an adult pursuant to §255 et. seq., of the Guam Code of Civil Procedure. The petitions alleged in the earlier, the offense of Theft by Unlawful Taking of a Motor Vehicle, in the other Aggravated Escape and Unlawful Use of a Motor Vehicle.

Section 255 of the Guam Code of Civil Procedure provides as follows:

> "Certification to courts for criminal proceedings. If a child sixteen (16) years of age or older is charged with a public offense, and if the court after full investigation deems it contrary to the best interest of such child or of the public to retain jurisdiction, it may in its discretion certify such child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult, but no child under sixteen (16) years of age shall be so certified; provided, that such certifying judge shall not in turn preside over the criminal proceedings against such child. (Enacted 1953; amended by P.L. 2-60, effective February 10, 1954.)"

Hearing was held on 30 April and 1 May, 1980, the minor being represented by Robert Bryant, Esquire, and the people

40

being represented by Diane Pierson, Assistant Attorney General of Guam.

Testimony was heard from the owners of the vehicles in question and the officers concerned in the apprehension in each motor vehicle charge. The Division of Youth Affairs employee injured in the escape at issue was examined as well as three (3) minors who admitted participation.

This all concerned the commission of the alleged offenses. All remaining witnesses on both sides testified regarding the minor himself and his response to treatment, proposed or past.

In determining whether to grant or deny the petition, this Court will use the eight (8) "determination factors" provided in the appendix to the opinion of the Court in <u>Kent</u> v. <u>United States</u>, 383 U.S. 541, 86 S Ct. 1045, 162 Ed. 2d 84., as follows:

> "1. The seriousness of the alleged offense to the community and whether the protection of the community requires waiver."

While the theft of property such as an automobile is a real hardship and an expense to the victim, it cannot, even when one speaks of a series of them, convey an urgency to put a minor in the adult system. The escape is not so clear cut. Certainly the prospect of escaped felons at loose in a community is serious. With the escape from a juvenile Facility, more attention must be paid to the succeeding factor, i. e., the character of the escape.

> "2. Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner."

The evidence is undisputable in the motor vehicle charges that neither the acquisition or the vehicles or the apprehension of the minor involved violence. The escape testimony was to the effect that there was violence against Division of Youth Affairs personnel but it is not clear who effected the violence since the other participating minors contradicted their earlier statements that the minor struck the guard. It was clear that he had brandished a possible weapon, i. e. an electric fan.

> "3. Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted."

The offense of aggravated escape included an offense against a person. The theft and unlawful use were against property.

41

"4. The prosecutive merit of the complaint, i. e., whether there is evidence upon which a Grand Jury may be expected to return an indictment (to be determined by consultation with the United States Attorney)."

The testimony presented at the hearing by the witnesses concerning commission of the alleged offenses would unquestionably justify the return of a true bill against the minor by a grand jury with respect to all indictable offenses.

"5. The desirability of trial and disposition of the entire offense in one court when the juvenile's associates in the alleged offense are adults who will be charged with a crime in the U.S. District Court for the District of Columbia." (Not applicable)

"6. The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living."

The minor was born on 26 December 1962. In a broad sense, anyone who commits antisocial acts, such as charged against the minor, must be classified as immature regardless of chronological age. However, it is not believed that the term "maturity" as used in the standard was used in that sense because then obviously no minor could ever be certified. The forensic psychiatrist who testified for the Government in this matter indicated in her written report and on the stand that the minor is immature "even for his years" which seems to indicate excessive immaturity. Furthermore, the term " sophistication" is used with the term "maturity". Sophistication is defined in Webster's New Collegiate Dictionary, Merriam-Webster, page 1101, copyright 1979, as follows:

"sophistication * * * 3: the process or result of becoming cultured knowledgeable, or disillusioned; esp: CULTIVATION, URBANITY 4: the process or result of becoming more complex, developed, or subtle"

None of the offenses alleged show a particular degree of sophistication -- the escape showed no guile and was simplistic in operation. The personality traits described by the probation officer and all those who have been with him over the years show a spoiled manipulative child rather than a calculating adult.

The home life of the minor has in fact been, except for brief interludes with his brother, in an institution or foster homes. In most instances the minor left them with or without the consent of the juvenile authorities before any one could achieve a lasting effect.

The minor's drunken state on the occasions of his apprehensions which was described by several of the witnesses indicates a condition which the psychiatrist described as "Alcoholism" begun young. This is a condition which one associates with older persons but cannot as such be deemed a mark of either sophistication or maturity.

> "7. The record and previous history of the juvenile, including previous contacts with the Youth Aid Division, other law enforcement agencies, juvenile courts and other jurisdiction, prior periods of probation to this Court, or prior commitments to juvenile institutions."

Jess Guerrero testified as a Probation Officer. His contact with the minor went back over the seven years of Mr. Guerrero's experience as a Probation Officer and it was he who recommended to the Government that certification be sought. He outlined for the Court the four foster home breakdowns, the failure of placement in Sanctuary and Cottage Home Facility. He also commented on the progression of severity of the offenses - from statutory offenses to felony escape. However, the Court notes this is not a steady escalation but rather a succession (lengthy) of nonviolent crimes against property culminating in the escape which involved injury to a Division of Youth Affairs staff member.

The frustration of the probation officer is apparent. His best efforts on behalf of the minor have not changed the minor's attitude. Frank still 'walks' when the desire hits him to leave his current situation.

John Balajadia, Division of Youth Affairs Superintendent, testified as to the minor's twenty-five (25) contacts with the system. His opinion was that Juvenile Justice could not offer long term treatment. It is noted that there is not a long time left for the juvenile stage of this young man's life. It was not stated that the drinking problem was treated while the minor was at the facility.

> "8. The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the Juvenile Court."

The Sad Man's World experience outlined to the Court by Mr. Hoffman is a deterrent directed "tour" of the Guam Adult Correctional Facility coupled with a conference of the minor so conducted, by a selected group of inmates including convicted murderers. It is a "sense" oriented experience to give the minor a realistic view of life within prison walls completely authentic, completely deglamorized.

43

ISA - the live-in facility directed by Mr. Perez, offers a support environment for adults and minors who have a drug problem. (See Paragraph 6 with respect to minor's problem). Although the minor left the premises while under Court order to stay there, the Director and inmates have indicated their willingness to receive him again. It is noted that upon his absenting himself from ISA, the minor went to the authorities and turned himself in and did not attempt to hide from the authorities.

Neither of these procedures has been really utilized for this minor (the ISA experience was too short lived to be evaluated). Their potential effectiveness is apparent to the Court and well suited to this minor's situation. A new attitude is already manifested in his return to the Lockup upon leaving ISA.

Upon analysis of the eight (8) determining factors discussed above, it is the opinion of the Court that it is in the best interest of the minor and of the public for the Juvenile Court to retain jurisdiction.

Judgment shall be in accordance herewith.